**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Alexis Fernandez Alvarez,<br>Petitioner<br>v.<br>Todd Blanche, et al.,<br>Respondents | Case No.: 2:26-cv-02514-JAD-DJA<br><br>**Order Denying Habeas Petition and Closing Case**<br><br>[ECF No. 13] |

Petitioner Alexis Fernandez Alvarez is a Cuban national who came to the United States in 1995 and was ordered removed in 2007. Alvarez was held in immigration custody for four months under that removal order, but he was released on an order of supervision after immigration authorities failed to effectuate his removal to Cuba. On August 6, 2026, Immigration and Customs Enforcement (ICE) officials took him back into custody after revoking his order of supervision. He remains detained at the Nevada Southern Detention Center in Pahrump, Nevada.

About a week after he was detained, Alvarez filed a pro se habeas petition seeking his release from immigration custody.[1] I appointed counsel, and Alvarez filed a counseled amended petition in September. Alvarez contends that his detention lacks statutory authority and is unconstitutional because he is being held with no likelihood that he will be removed in the reasonably foreseeable future, the government failed to follow its own regulations when it detained him, and the government's third-country-removal policies are unconstitutional. The government responds that it properly revoked Alvarez's supervision order when it arrested him and that its regulations permit an additional six months of detention for those who violate their

[1] ECF Nos. 1-1, 4.

supervision conditions. Because I conclude that the regulations do permit additional detention time under these circumstances and Alvarez has not shown that his current detention violates due process or exceeds the government's statutory authority, I deny his petition and close this case.

**Background**

Alexis Fernandez Alvarez is a Cuban national who was paroled into the United States in 1995.[2] In 2003, Alvarez was convicted of possession with the intent to distribute cocaine and served a 60-month sentence in federal custody.[3] ICE determined that Alvarez was removable because of his controlled-substances conviction, and he was ordered removed on September 18, 2007.[4] Alvarez was held in immigration custody until January 18, 2008, when ICE released him on an order of supervision because they could not effectuate his removal to Cuba.[5]

Between 2008 and 2026, Alvarez was convicted of a myriad of state misdemeanor and felony theft and drug offenses.[6] On February 16, 2025, while Alvarez was detained at the Clark County Detention Center, ICE lodged an immigration detainer, but Alvarez was first transferred to the Nevada Department of Corrections to serve a sentence.[7] Alvarez was transferred from Nevada custody to ICE detention on August 6, 2026.[8] That day, Alvarez was served with a

---

[2] ECF No. 16-2 at 3.

[3] *Id.* at 4.

[4] *Id.* at 3; ECF No. 16-6.

[5] ECF No. 16-2 at 3.

[6] *Id.* at 3–4 (reflecting 2009 misdemeanor convictions for destroying property and petty larceny, a 2010 conviction for felony robbery, a 2016 misdemeanor conviction for a drug offense, two 2017 felony convictions for vehicle theft, a 2021 felony conviction for vehicle theft, a 2022 felony conviction for burglary of a business, and 2024 and 2025 felony violations of parole).

[7] *Id.* at 3.

[8] *Id.*

notice of revocation of release under 8 C.F.R. § 241.13(i) based on a 2024 felony conviction.[9] Though that notice stated that an informal interview about the revocation would be held on August 17, 2026, the interview actually took place on August 6th.[10] Alvarez was also served with a removal warrant on the 6th.[11]

## Discussion

### A. This court has jurisdiction over Alvarez's claims.

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[12] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[13]

### B. Alvarez hasn't met his initial burden to show that he is entitled to relief.

#### *1. The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens. 8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed. The statute contains no limit on the length of time that a noncitizen may be

---

[9] ECF No. 16-7 at 2.

[10] ECF No. 16-8 at 2 (informal-interview form, reflecting that Alvarez did not provide a written statement or documents to contest the revocation of his supervision order).

[11] ECF No. 16-9.

[12] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[13] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

held after his removal order becomes final. But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[14] To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[15] It determined that six months of post-removal-order detention is presumptively reasonable.[16] But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[17] If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[18] And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[19]

***2. Alvarez hasn't shown that his detention is governed by <u>Zadvydas</u> or that the government failed to follow its own regulations when it re-detained him.***

The government acknowledges that Alvarez was held in custody under his final removal order for four months in 2007–2008. But it contends that the revocation provisions in its

---

[14] *Id.* at 690.

[15] *Id.* at 699.

[16] *Id.* at 701.

[17] *Id.*

[18] *Id.*

[19] *Id.* (cleaned up).

regulations permit his continued detention now. Two primary regulations—8 C.F.R. §§ 241.4 and 241.13—set procedures for revoking supervised release for detainees like Alvarez.

***a. 8 C.F.R. § 241.4: Noncitizens awaiting removal***

8 C.F.R. § 241.4 governs the continued detention of noncitizens after the 90-day removal period lapses. If a noncitizen is released after the 90-day-mandatory-detention period, § 241.4(l)(1) allows ICE to return to custody any noncitizen "who has been released under an order of supervision or other conditions of release who violates the conditions of release."[20] A noncitizen subject to re-detention under this provision "will be afforded an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."[21] And if he remains detained after that initial interview, ICE will start a review process with "notification to the [noncitizen] of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked."[22]

***b. 8 C.F.R. § 241.13: Noncitizens who cannot be removed to their home country or a third country***

8 C.F.R. 241.13 governs "special review procedures" for noncitizens subject to a final order of removal and detained under the custody-review procedures in § 241.4 who have "provided good reason to believe [that] there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."[23] It provides a process by which immigration officials may determine

---

[20] 8 C.F.R. § 241.4(l)(1).

[21] *Id.*

[22] *Id.* at § 241.4(l)(3).

[23] *Id.* at § 241.13(a).

whether a noncitizen's removal is significantly likely and order supervised release if removal isn't likely in the reasonably foreseeable future.[24] A noncitizen who violates the conditions of release under this regulation may also be "returned to custody" and "may be continued in detention for an additional six months in order to effect the [noncitizen's] removal, if possible, and to effect the conditions under which the [noncitizen] had been released."[25] Revocation under § 241.13(i) also requires immigration officials to promptly conduct an informal interview, during which the noncitizen "may submit any evidence or information that he or she believes shows" that his removal is unlikely or that he hasn't violated the order of supervision.[26]

#### *c. 8 C.F.R. § 241.13 applies to Alvarez's re-detention, and the government followed its provisions when detaining him.*

The government contends that the regulatory scheme in § 241.13(i) applies here and was followed when re-detaining Alvarez. It contends that, because he violated his release conditions, he is subject to a new six-month period during which ICE can attempt to remove him. Alvarez contests this conclusion, arguing that the revocation of his release should be governed by § 241.4, which requires a specific process to revoke supervision that ICE did not follow.[27] And he contends that, even if § 241.13(i)(1) applies, he was not provided adequate notice or a meaningful opportunity to respond to the revocation.

Alvarez has not shown that § 241.4's requirements for revocation of release apply to him instead of those enshrined in § 241.13. Section 241.13 applies to noncitizens who are released on an order of supervision because ICE determines that they are not removable in the reasonably

---

[24] *See id.* at § 241.13(h).

[25] *Id.* at § 241.13(i)(1).

[26] *Id.* at § 241.13(i)(3).

[27] ECF No. 19 at 10.

foreseeable future. Alvarez acknowledges that he was released in 2008 because his removal could not be effectuated and expressly concedes in his amended habeas petition that § 241.13's provisions apply to him.[28] So I do not evaluate whether the government adequately complied with § 241.4 and instead limit my consideration to § 241.13.

The records produced by the government show that Alvarez was served with a notice stating that his release was revoked under § 241.13(i)(1) because he was convicted of felony theft on November 20, 2024.[29] They also show that Alvarez was given an informal interview the same day as his arrest, but he did not provide a written statement or any documents responding to the reasons for his revocation.[30] Alvarez contends that the government hasn't shown that it complied with its own regulations because (1) there are discrepancies on the revocation form concerning the date his supervision order was issued, (2) the supervision order wasn't produced so it's unclear "what condition he violated as a result of" his 2024 theft conviction, and (3) the records don't show that Alvarez was informed that he could submit evidence in support of his release at the initial interview and was given sufficient notice to do so.[31]

I find Alvarez's arguments insufficient to overcome the government's showing that it complied with its regulations when it revoked his supervision. The revocation notice contains adequate information about the reason for his revocation: violation of a term of his supervision

---

[28] ECF No. 13 at 14–15 (explaining that "8 C.F.R. § 241.4(l) applies to re-detention of individuals previously released by ICE generally, while 8 C.F.R. § 241.13(i) applies to persons released after providing good reason to believe that they will not be removed in the reasonably foreseeable future, as . . . Alvarez plainly was" and analyzing the government's compliance with § 241.13 when it arrested Alvarez).

[29] ECF No. 16-7 at 1.

[30] ECF No. 16-8.

[31] ECF No. 19 at 11–12. I don't address Alvarez's argument that the revocation notice was signed by the wrong official because the regulatory requirement he relies on comes from § 241.4, not § 241.13.

order that prohibited the commission of crimes. And the fact that the notice references a supervision order dated in 2012 rather than 2008 does not raise the concern of a fatal defect. Alvarez was released from ICE detention in 2008, but he was "encountered" by ICE in 2012 when he was in state custody, and ICE decided "to place him on Alternatives to Detention instead of assuming custody" at that time.[32] That documentation supports the conclusion that Alvarez received a new supervision order in 2012. And Alvarez provides no information to suggest that he was not given the opportunity to respond to the reasons for revocation and provide information to contest the government's claim that he violated his supervision conditions. I thus cannot conclude that the government failed to follow its own regulations when it revoked Alvarez's supervision and detained him under § 241.13(i)(1), and I deny his petition on that ground.

#### *d. Alvarez has not shown that the government intends to detain him indefinitely under 8 C.F.R. § 241.13's 6-month detention provision or that it intends to remove him to a third country.*

Alvarez also contends that the government did not cite "to a court holding that criminal conviction[s] give ICE the right to indefinite[ly] [detain a noncitizen] post-final removal order, absent a significant likelihood of removal in the reasonably foreseeable future," claiming that there "is no exception to the due-process right to be free from indefinite detention based upon having a criminal history."[33] He concludes by requesting habeas relief because his removal to a third country would be unconstitutional.

There are several flaws in Alvarez's remaining arguments that preclude habeas relief. Section 241.13's revocation procedures do not "give ICE the right" to indefinitely detain

---

[32] ECF No. 16-2 at 4.

[33] ECF No. 19 at 10.

noncitizens who violate their supervision conditions. It provides an extra six months for ICE to try and effectuate Alvarez's release, even when ICE is aware that removal may not be reasonably foreseeable. The *Zadvydas* court acknowledged that, even after a court determines that continued detention is unreasonable because a noncitizen is unlikely to be removed, the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions."[34] So because *Zadvydas* is not the correct procedural framework to apply to Alvarez's current detention at this time, I deny his petition on his *Zadvydas* claim.

Finally, Alvarez contends that the government's current third-country-removal policy is unlawful. But there is no evidence in the record showing that the government is planning to deport Alvarez to a third country or that it will not provide adequate notice if it chooses that path. So I deny relief on that ground as premature. I thus find that Alvarez is not entitled to habeas relief on any basis, and I deny his petition.

## Conclusion

IT IS THEREFORE ORDERED that Alexis Fernandez Alvarez's amended habeas petition **[ECF No. 13] is DENIED.** The Clerk of Court is directed to **ENTER JUDGMENT** accordingly and **CLOSE THIS CASE**.

U.S. District Judge Jennifer A. Dorsey
November 13, 2026

[34] *Zadvydas*, 533 U.S. at 700.